KENNER LAW FIRM APC
DAVID E. KENNER, CSB 41425
ATTORNEY AT LAW
16633 VENTURA BOULEVARD, SUITE 735
ENCINO, CALIFORNIA 91436
TELEPHONE: 818-995-1195
FAX: 818-475-5369
David@kennerlaw.com

Attorney for Defendant Yevgeni Gershman

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25CR-00595-MCS-1 |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER; EXHIBITS** |
| v. | |
| YEVGENI GERSHMAN, | |
| Defendant. | |

     Yevgeni Gershman, through his counsel of record, hereby files this Memorandum in Support of his Application for Reconsideration of the August 7, 2025 detention order.

Dated: September 22, 2025

Respectfully submitted,

 _s/ David Kenner_____
David Kenner

Counsel for Yevgeni Gershman

## MEMORANDUM

## I.    INTRODUCTION

Yevgeni Gershman stands charged in this matter with nonviolent gambling-related offense and false statements in connection with an immigration form. He is not accused of any crimes of violence or of any offenses related to, or suggestive of, flight. Prior to the instant case, he has neither been arrested nor charged with a crime in the United States. There is no competent evidence that Mr. Gershman has otherwise been involved in any criminal activity in the past ten years, including during the four years that he has made the United States his home. On the contrary, he has lived a law-abiding existence during that time, has maintained gainful employment, and is focused on supporting his children, two of whom live in the Los Angeles area. Contrary to the government's factually incorrect assertions – both to Pretrial Services and to the court below – Mr. Gershman *has legal status* in the United States. The United States government has even authorized Mr. Gershman to work during the pendency of his application for residency. Indeed, this authorization was renewed less than six months ago. Exh. A (Employment Authorization Card).[1]

Even assuming the truth of the facts set forth in the indictment, Mr. Gershman has been aware of the existence of this federal investigation since 2022

---

[1] The Employment Authorization Card indicates that it was issued under 8 C.F.R. § 274a.12(c)(9), which provides that an alien who has filed an application to adjust his status to be a lawful permanent resident has been given authorization to work and is not an "unauthorized alien." As this exhibit is being filed publicly filed, it has been redacted to remove Mr. Gershman's personal identifying information. An unredacted version will be provided to the Court and the government.

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION
OF DETENTION ORDER

– more than three years ago. But despite having full knowledge he was being investigated, Mr. Gershman did not flee. He did not return to Israel. Rather, he remained in the United States, where he focused on building a life for himself and his family in his adopted homeland. He does not present a serious risk of flight.

In the course of these proceedings – and in press releases – the government has attacked Mr. Gershman's character, accusing him of being connected to Israeli organized crime and committing extortion and other crimes. Notably, *none* of these allegations are contained in the charging document. The indictment is wholly devoid of any references to these alleged activities, and the Court should accord them no weight as a result.

On the contrary, Mr. Gershman enjoys the support of his family, friends, and members of his community – five of whom are willing to serving as sureties here. They are well aware of Mr. Gershman's background, as well as the current charges, and are willing to back their unshakable faith in Mr. Gershman with money or property. Their willingness to support Mr. Gershman, coupled with appropriate conditions fashioned by the Court, demonstrate that Mr. Gershman's appearance can be assured and any danger to the community can be minimized. The Court should release Mr. Gershman on bond.

## II.    PROCEDURAL HISTORY

On July 15, 2025, the Grand Jury charged Mr. Gershman with violating 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 1955 (operating an illegal gambling business); 18 U.S.C. § 1001(a)(2) (false statements); 8 U.S.C. § 1325(c) (marriage fraud); and 18 U.S.C. 1546(a) (false statements in immigration documents). Dkt. No. 1. The indictment does not charge, nor does it reference, any acts of violence. Mr. Gershman made his initial appearance and arraignment in front of Magistrate Judge Jacqueline Chooljian on July 30, 2025. Dkt. No. 44. At that time, Judge

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

Chooljian continued the detention hearing to August 7, 2025. Judge Chooljian ordered Mr. Gershman to be detained at the conclusion of the August 7 hearing.

Through this application, Mr. Gershman seeks review of Judge Chooljian's detention order.

## III.   DISCUSSION

### A.   The Bail Reform Act

In this non-presumption case, the Court's default position is release. It is clear that "federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Only in rare circumstances should release be denied," and "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* (citations omitted); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) ("The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

With respect to danger, the Bail Reform Act requires that the facts the judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (adopting the language in *Motamedi*, 767 F.2d at 1406-07). It is, of course, the government that bears the burden of showing dangerousness by clear and

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION
OF DETENTION ORDER

convincing evidence. Clear and convincing evidence means proof that a particular

defendant actually poses a danger to the community, not that a defendant in theory

poses a danger. *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991).

The Court can, most certainly, fashion a condition or combination of

conditions to apply to a release on bond. Although not perceived to be necessary,

this could include house arrest with electronic monitoring. No other defendant has

this condition, and Mr. Gershman certainly should not. This would of course be

far preferable to the alternative of custodial confinement. There is an excess of

16,700 pages of Discovery not including the Cellebrite information. It is

exceedingly difficult to provide effective assistance of counsel under these

circumstances.

With respect to flight, a person accused of a crime cannot be detained

unless the government shows by "a clear preponderance of the evidence" that the

person presents a serious risk of flight. *Motamedi*, 767 F.2d at 1406; 18 U.S.C.

§3142(c), (e). "The government's burden of proof is not trivial." *United States v.

Chen*, 820 F. Supp. 1205, 1207-08 (N.D. Cal. 1992). The government must prove

that no condition or combination of conditions will reasonably assure the person's

appearance at future proceedings. *Motamedi*, 767 F.2d at 1407 ("[W]e must

consider whether the government has demonstrated by a preponderance of the

evidence that no condition or combination of conditions will reasonably assure

Motamedi's appearance."); *see also* 18 U.S.C. §3142(c)(1)(B). These conditions

need not be severe—indeed, the Bail Reform Act "mandates release of a person

facing trial under the least restrictive condition or combination of conditions that

will reasonably assure the appearance of the person as required." *Motamedi*, 767

F.2d at 1405. To that end, close cases should result in release: "[t]o give effect to

the principle that doubts regarding the propriety of release be resolved in favor of

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION
OF DETENTION ORDER

the defendant, the court is to rule against detention in close cases." *Chen*, 820 F. Supp. at 1208 (citing *Motamedi*, 767 F.2d at 1405-06).

The Act requires that a defendant be detained based on risk of flight if, and only if, he represents a *serious* risk of flight—a substantial burden for the government. *United States v. Giordana*, 370 F. Supp. 2d 1256, 1270-72 (S.D. Fla. 2005). The insertion of the word "serious" with regard to a risk of flight indicates that a judicial officer should not consider detention unless the government makes a sufficient showing that the defendant is highly motivated to flee. "A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." *Id*. (citing *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986)). There is no such thing as a "guarantee" against flight, and the sole inquiry is whether the assurances that Mr. Gershman will appear as ordered are reasonable. *Orta*, 760 F.2d at 891 (court cannot insist that the conditions of defendant's release "guarantee" the safety of the community, only that the conditions "reasonably assure" community safety).

This Court's review of the prior proceedings is *de novo*. *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990).

### B.    The Bail Reform Act Calls for Mr. Gershman's Release

Under the Act, the Court is charged with considering the following factors in determining whether detention is appropriate: (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence; (3) Mr. Gershman's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. §3142(g). An analysis of these factors calls for release in this case.

### 1.    Nature and Circumstance of the Charged Offenses

As noted previously, Mr. Gershman is charged with five nonviolent offenses. Two of the charges deal with an alleged poker game, while the

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

remaining three relate to an alleged sham marriage. The most recent of the events referenced in the indictment occurred in September 2022 – nearly five years ago. Although any federal charge is serious, an analysis of the relevant Sentencing Guidelines for the charged offenses place them in context:

- 18 U.S.C. § 371 and 18 U.S.C. § 1955 have a Total Offense Level of 6 or 12, with corresponding sentencing ranges of 0-6 months or 10-16 months. *See* U.S.S.G §§ 2E3.1(a)(2); (a)(6).
- 18 U.S.C. § 1001 has a Total Offense Level of 14, with a corresponding sentencing range of 15-21 months. *See* U.S.S.G § 2J1.2(a).
- 8 U.S.C. § 1325(c) has a Total Offense Level of 8, with a corresponding sentencing range of 0-6 months. *See* U.S.S.G § 2L2.2(a).
- 18 U.S.C. § 1546(a) has a Total Offense Level of 8, with a corresponding sentencing range of 0-6 months. *See* U.S.S.G § 2L2.2(a).

In sum, *the most serious charge* leveled by the government after a multiyear investigation calls for a *15-to-21-month sentence* under the United States Sentencing Guidelines.

The indictment does not charge – or even reference – any alleged acts of violence on Mr. Gershman's part. Certainly, were the government to believe that it possessed competent evidence of such acts, it would have presented it to the grand jury for consideration. Or, if the government presented such evidence, the grand jury elected not to proceed with these charges. Either way, these unsubstantiated allegations should be afforded no weight by the Court in its analysis.

### 2.    Weight of the Evidence

The Act "neither requires nor permits a pretrial determination that the person is guilty." *Motamedi*, 767 F.2d at 1408 (citations omitted); *see also United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) (accord). Instead, this

factor may only "be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408 (citing 18 U.S.C. §3142(g)) (additional citations omitted). Courts generally consider this factor as the "least important" of the factors. *Id.*; *Gebro*, 948 F.2d at 1121.

The underlying allegations cannot be tested in connection with this bail review. In fact, Mr. Gershman's assistance to counsel out of custody will be the most reliable and most fair way to enable both sides in this dispute to present their respective cases. The government has provided minimal discovery to the defense, and neither the defense nor the Court is able at this time to evaluate the government's evidence to determine the viability of the allegations. As the weight of the government's evidence cannot be ascertained at this time, this factor (the least important of the four factors) is neutral and does not weigh in favor of detention.

### 3.    Mr. Gershman's History and Characteristics

Mr. Gershman is a 49-year-old father of three children, two of which live in the United States. As a child, he emigrated to Israel from the former Soviet Union on account of the discrimination suffered by Jewish people in that country. Unfortunately, Mr. Gershman, like many Russian Jews, found himself on the margins, impoverished and unable to break into Israeli society. He regrettably turned to crime to support himself. Mr. Gershman readily acknowledges his criminal history and regrets the life he lived. But that life is in the past: he has turned the page on his old life – indeed, his last conviction was in 2015, ten years ago. But through the ups and downs, Mr. Gershman remained devoted to his family, determined to give his children the stability he did not have as a child.

In 2021, in an effort to continue to distance himself from the life he lived, he came to the United States. He fell in love, marrying an American citizen.

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION
OF DETENTION ORDER

Although Mr. Gershman initially arrived in the United States on a tourist visa, he moved to adjust his status and apply for permanent residency. USCIS granted him authorization to work during the pendency of his application. Exh. A. He has been gainfully employed as a financial analyst by Sabag Electric since January 1, 2023. Jonathan Sabag, the company's owner (and a proffered surety), notes,

> Throughout his work with the company, Mr. Gershman proved himself as a valuable employee for the company. Mr. Gershman has consistently demonstrated a high level of professionalism, dedication and reliability.
>
> Mr. Gershman's work ethic and positive attitude have made him a valuable member of our team.

Exh. B (Letter of Jonathan Sabag). Mr. Gershman is paid a salary of $2500 every two weeks, and pays all required taxes. Exh. C (Pay Stubs).

Two of Mr. Gershman's children live in the Los Angeles area, including his 10-year-old son, Rom, for whom he cares and supports. Mr. Gershman plays an active role in his son's life, helping to take him to school, athletics, and other appointments. His son – from whom he has been separated for the past two weeks – is his world.

In the four years he has resided in the United States, Mr. Gershman has built a community in Los Angeles, and has established deep and significant ties to the area. These ties are amply demonstrated by the well of support shown to him upon his arrest. Numerous individuals have stepped forward to offer support to Mr. Gershman, and have indicated their willingness to serve as sureties to back any bond ordered by the Court.

Since Mr. Gershman's initial appearance, five individuals have come forward to serve as sureties by offering a cash deposit, being willing to post equity in real property, or by signing unsecured bonds. The total amount offered by these sureties is $695,000, a significant amount – especially in a case not involving a crime of violence, a drug offense, or an offense relating to flight. These

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION OF DETENTION ORDER

individuals know Mr. Gershman well, are familiar with his history, and are unflagging in their support – so much that they are willing to back their faith in Mr. Gershman with funds. These sureties include:

- Jonathan Sabag – Mr. Sabag, the owner of Sabag Electric, is Mr. Gershman's employer. Mr. Sabag is prepared to deed **$500,000 in equity** in a property he owns.

- Orit Elya – Ms. Elya, who owns a construction company, is the sister of the mother of Mr. Gershman's young son, and has known him for approximately 13 years. She is willing to sign an unsecured bond in the amount of **$100,000**.

- Shmuel Federbush – Mr. Federbush, who is a fractional CFO, has been a friend of Mr. Gershman for three years. He is willing to sign an unsecured bond in the amount of **$50,000**.

- Eliran Jakobson – Mr. Jakobson, who owns a water damage restoration company, has been a friend of Mr. Gershman for three-to-four years. He is willing to sign an unsecured bond in the amount of **$25,000**.

- Ion Topa – Mr. Topa, who owns a transportation company, has been a friend of Mr. Gershman for three years. He is willing to sign an unsecured bond in the amount of **$20,000**.

All of the proposed sureties have been advised of the responsibility that comes with being a surety, and the reality that the government could and would seek to collect on these obligations should Mr. Gershman violate any of the terms of bond. Regardless, their trust in Mr. Gershman is such that they are willing to support him with collateral. The proffered sureties, coupled with reasonable restrictions imposed by the Court, provide reasonable assurance that Mr. Gershman will appear and will not present a danger to the community.

### 4.    Danger to the Community and Risk of Flight

Despite the government's protestations, Mr. Gershman is not a danger to the community. There is no evidence that he has been involved in any criminal activity since 2022, when Mr. Gershman was allegedly involved in an illegal poker game and a sham marriage. There government has offered no evidence that he was involved in criminal activity in the United States before this time (or during the prior six years he lived in Israel). Although the government makes much of a text message purportedly sent by Mr. Gershman, it is clear from the government's reading of the message[2] that it contained no actual or implied threats. Moreover, although the text was sent a number of years ago, the government has offered no evidence that Mr. Gershman harmed – or even threatened to harm – anyone. In fact, there is no evidence of Mr. Gershman having assaulted anyone, nor could there be, because that has never happened. **In fact, the Government alleges that threats, if any, came from Co-defendant Allen Austria.**

Moreover, the government claims that a letter allegedly found at the home of the mother of Mr. Gershman's child somehow links him to organized crime in Israel. But it has not proffered the contents of the purported letter, nor has it explained how it connects Mr. Gershman to a criminal enterprise in that country. The government's allegations are nothing more than speculation and innuendo, and are designed to distract from the inescapable conclusion that all the actual evidence – and not the government's arguments – call for Mr. Gershman's release.

In addition, the government's asserts that firearms allegedly found at the residence of the mother of Mr. Gershman's son constitute evidence of danger, it has not shown that the firearms (1) were possessed by Mr. Gershman; (2) were unlawful to possess; (3) were ever used by Mr. Gershman; or (4) are in any way related to the offense conduct. Even assuming the truth of the government's claim

that Mr. Gershman admitted that the firearms belonged to him – to be clear, he denies this claim – it does not follow that the firearms were illegally possessed or were used in a crime. Moreover, a condition that he not possess firearms would be sufficient to neutralize any perceived danger.

Nor is Mr. Gershman a flight risk. He has made plain his desire to remain in the United States. He has worked hard to build a life here. Two of his three children are here. He is employed. He pays taxes. He is a valued member of the community. The reality is that the existence of a federal investigation has been known for three years. And in those three years, Mr. Gershman did not run. He did not hide. Rather, he remained in the United States – living his life, working and supporting his family. To the extent that the government claims that he presents a risk of flight because he possesses travel documents from other countries, Mr. Gershman will readily acknowledge that he is an Israeli national and possesses an Israeli passport (which would remain in the custody of Pretrial Services were he released). As to the allegation that Mr. Gershman possessed travel documents from Cyprus, the government has shown no evidence whatsoever to support this allegation. Accordingly, the Court should dismiss it – as well as the remainder of the government's conclusory allegations.

## IV.    CONCLUSION

For all the reasons set forth above, Mr. Gershman respectfully requests the Court grant bond, and order him released during the pendency of this case.

MEMORANDUM ISO APPLICATION FOR RECONSIDERATION
OF DETENTION ORDER

1

2                                    PROOF OF SERVICE

3

4          I, the undersigned, declare that I am over the age of 18 years and not a party to the
within action or proceeding.   I am employed in and am a resident of Los Angeles County where

5    the mailing occurs; and my business address is 16633 Ventura Boulevard, Suite 735
Encino, California 91436-1869 On September 22, 2025, I caused to be served the following

6    document(s):

**MEMORANDUM IN SUPPORT OF APPLICATION FOR**

7                **RECONSIDERATION OF DETENTION ORDER; EXHIBITS**

on the interested parties in this action by as set forth in the Service List attached

8    hereto:

9    ____    BY MAIL:  I further declare that I am readily familiar with the firm's business practice

10               of collection and processing of correspondence for mailing with the United States Postal
Service, and that the correspondence shall be deposited with the United States Postal

11               Service this same day in the ordinary course of business pursuant to Code of Civil
Procedure section 1013(a).  I then sealed each envelope and, with postage thereon fully

12               prepaid, placed each for deposit in the United States Postal Service, this same day, at my
business address shown above, following ordinary business practices.

13

14   ____    BY FACSIMILE SERVICE:  I transmitted the document(s) described above to the
person(s) and facsimile number(s) identified below pursuant to California Rules of Court,

15               Rule 2006.  The facsimile machine I used complied with California Rules of Court, Rule
2003 and no error was reported by machine.

16

17   ____    BY PERSONAL SERVICE:  I emailed the documents identified above to a courier
service, **Name of Service**, to be delivered by personal service to the parties at the

18               addresses listed below.

19   _X___    ELECTRONIC SERVICE:   I transmitted the document(s) described above to the
person(s) and email addresses identified below pursuant to California Rules of Court.

20

21   ____    OVERNIGHT MAIL:  I further declare that I am readily familiar with the firm's business
practice of collection and processing of overnight delivery for mailing, and that the

22               correspondence shall be deposited with the overnight delivery service, **Federal Express**,
to be delivered by overnight delivery to the parties at the address listed below.

23

24          I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on September 22, 2025, at Encino, California.

25

26                                             _S M_

                                  _____

27                                             Steve McClain

28

13

# Exhibit A



# Exhibit B



License No. 569274

August 5, 2025

To Whom It May Concern

Re: Yevgeni Greshman

This letter is to confirm that Mr. Yevgeni Greshman has been working with **Sabag Electrical Corporation** since January 1, 2023.

Mr. Greshman is working at the company offices as a Financial Analyst and over-sees preparing bids, analyzing projects costs and calculating profitability.

Throughout his work with the company Mr. Greshman proved himself as a valuable employee for the company. Mr. Greshman has consistently demonstrated a high level of professionalism, dedication and reliability.

Mr. Greshman work ethic and positive attitude have made him a valuable member of our team.

Should you require any further information regarding Mr. Greshman, please do not hesitate to contact our office.

Sincerely,

Jonathan Sabag
CEO

# Exhibit C

Sabag Electric Corporation
Northridge, Ca 91324

Yevgeni Greshman
6644 Glade Ave
Woodland Hills, CA 91303

---

**Employee Pay Stub**          Check number: 4180          Pay Period: 05/26/2025 - 06/08/2025          Pay Date: 06/13/2025

**Employee**                                                  SSN

Yevgeni Greshman, 6644 Glade Ave, Woodland Hills, CA 91303          ***-**-2409

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary - Office | | | 2,500.00 | 27,500.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| FIT - Federal Income Tax | | | -227.00 | -2,497.00 |
| Social Security Employee | | | -155.00 | -1,705.00 |
| Medicare Employee | | | -36.25 | -398.75 |
| SIT - State Income Tax | | | -93.80 | -1,031.80 |
| SDI - State Disability Ins. | | | -30.00 | -330.00 |
| | | | -542.05 | -5,962.55 |

| Net Pay | | | 1,957.95 | 21,537.45 |
|---|---|---|---|---|

---

Sabag Electric Corporation, Northridge, Ca 91324

**Powered by Intuit Payroll**


Scanned with CamScanner

Sabag Electric Corporation
Northridge, Ca 91324

Yevgeni Greshman
6644 Glade Ave
Woodland Hills, CA 91303

---

| Employee Pay Stub | Check number: 4215 | | | Pay Period: 06/09/2025 - 06/22/2025 | | Pay Date: 06/27/2025 |
|---|---|---|---|---|---|---|

**Employee**

Yevgeni Greshman, 6644 Glade Ave, Woodland Hills, CA 91303

**SSN**

***-**-2409

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary - Office | | | 2,500.00 | 30,000.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| FIT - Federal Income Tax | | | -227.00 | -2,724.00 |
| Social Security Employee | | | -155.00 | -1,860.00 |
| Medicare Employee | | | -36.25 | -435.00 |
| SIT - State Income Tax | | | -93.80 | -1,125.60 |
| SDI - State Disability Ins. | | | -30.00 | -360.00 |
| | | | -542.05 | -6,504.60 |

| Net Pay | | | 1,957.95 | 23,495.40 |
|---|---|---|---|---|

Sabag Electric Corporation, Northridge, Ca 91324

Powered by **Intuit Payroll**

Sabag Electric Corporation
Northridge, Ca 91324

Yevgeni Greshman
6644 Glade Ave
Woodland Hills, CA 91303

---

**Employee Pay Stub**  Check number: 4252    Pay Period: 06/23/2025 - 07/06/2025    Pay Date: 07/11/2025

**Employee**

Yevgeni Greshman, 6644 Glade Ave, Woodland Hills, CA 91303

**SSN**

***-**-2409

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary - Office | | | 2,500.00 | 32,500.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| FIT – Federal Income Tax | | | -227.00 | -2,951.00 |
| Social Security Employee | | | -155.00 | -2,015.00 |
| Medicare Employee | | | -36.25 | -471.25 |
| SIT – State Income Tax | | | -93.80 | -1,219.40 |
| SDI – State Disability Ins. | | | -30.00 | -390.00 |
| | | | -542.05 | -7,046.65 |

| Net Pay | | | 1,957.95 | 25,453.35 |

Sabag Electric Corporation, Northridge, Ca 91324

**Powered by Intuit Payroll**


Scanned with CamScanner

Sabag Electric Corporation
Northridge, Ca 91324

Yevgeni Greshman
6644 Glade Ave
Woodland Hills, CA 91303

---

**Employee Pay Stub**          Check number: 4287          Pay Period: 07/07/2025 - 07/20/2025          Pay Date: 07/25/2025

**Employee**                                                SSN

Yevgeni Greshman, 6644 Glade Ave, Woodland Hills, CA 91303          ***-**-2409

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary - Office | | | 2,500.00 | 35,000.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| FIT - Federal Income Tax | | | -227.00 | -3,178.00 |
| Social Security Employee | | | -155.00 | -2,170.00 |
| Medicare Employee | | | -36.25 | -507.50 |
| SIT - State Income Tax | | | -93.80 | -1,313.20 |
| SDI - State Disability Ins. | | | -30.00 | -420.00 |
| | | | -542.05 | -7,588.70 |
| **Net Pay** | | | **1,957.95** | **27,411.30** |

Sabag Electric Corporation, Northridge, Ca 91324                    Powered by **Intuit Payroll**