**KENNER LAW FIRM APC**
**DAVID E. KENNER, CSB 41425**
**ATTORNEY AT LAW**
**16633 VENTURA BOULEVARD, SUITE 735**
**ENCINO, CALIFORNIA 91436**
**TELEPHONE: 818-995-1195**
**FAX: 818-475-5369**

*Attorney for Petitioner*
*Yevginy Gershman*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>)<br>YEVGINY GERSHMAN, *et al.*,  )<br>)<br>)<br>Defendant.  )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25CR-00595-MCS-1<br><br>**DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS**<br><br>[Fed. R. Crim. Proc. 7(f)]<br><br>DATE: October 6, 2025<br>TIME: 3:00 p.m.<br>Dept: 7C<br><br>First Street Courthouse<br>350 W. First Street<br>Los Angeles, CA  90012<br>Department 7C |

///

///

///

-1-

TO THE HONORABLE MARK C. SCARSI, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY, AND ALL PARTIES IN INTEREST:

# I

# INTRODUCTION

The Government's opposition relies on unsubstantiated characterizations of Mr. Gershman as a danger to the community based on uncharged conduct, while overstating his purported risk of flight.  Contrary to the Government's assertions, Mr. Gershman presents neither a serious risk of flight nor a danger to the community that cannot be mitigated by appropriate conditions of release.

To get to the point:

1. To alleviate any concern regarding firearms, Mr. Gershman would agree to a strict condition prohibiting the possession of any firearms or dangerous weapons. He will consent to warrantless searches of his residence, vehicle, and person by Pretrial Services at any time to ensure compliance.

2. The Government's allegations of threats, while serious, stem entirely from charged gambling offenses—specifically, the collection of gambling debts. They do not suggest a generalized danger to the public. To eliminate this concern entirely, however, Mr. Gershman would consent to a strict no-contact order with the complaining witnesses and the individual identified as the "SOI." This tailored condition directly mitigates the specific risk alleged by the Government.

and immigration-related false statements, with no allegations of violence in the indictment. The Government's cited authorities are largely inapposite, as they

involve defendants charged with violent crimes, drug trafficking, or circumstances far more indicative of flight than those present here.

As detailed below, conditions such as a reasonable bond, sureties, GPS monitoring, and surrender of travel documents can reasonably assure Mr. Gershman's appearance and the safety of the community. The Court should grant the application and release Mr. Gershman on the following conditions:

- Mr. Sabag, the owner of Sabag Electric, is deeding $500,000.00 in equity in a property he owns;
- Orit Elya, Mr. Gershman's sister in law, will sign an unsecured bond for 100,000.00;
- Shmuel Federbush, who is a CEO of a Fractional Company, will sign an unsecured bond to the tune of 100,000.00;
- Mr. Eliran Jakobson, who owns a water damage restoration company, has agree to sign an unsecured bond to the tune of $25,000.00.; and
- Ion Topa, who owns a transportation company, is willing to sign an unsecured bond in the sum of $20,000.00.

## II

## LEGAL STANDARD

Mr. Gershman agrees with the Government that the Court reviews detention orders *de novo* under 18 U.S.C. § 3145(b). *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (reviewing district court's detention order *de novo*). However, Santos-Flores is inapposite here, as it addressed the narrow issue of whether a district court must hold a hearing before revoking pretrial release for a violation of conditions, not the initial determination of detention based on flight risk or danger in a nonviolent case like this one. *Id*. at 1091-92.

In contrast, the instant case involves no prior release violations and turns on whether the Government has met its burden under 18 U.S.C. § 3142(f). The Government bears the burden of proving risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Detention is appropriate only if no conditions can reasonably assure appearance or safety. 18 U.S.C. § 3142(e). The Bail Reform Act favors release, consistent with the presumption of innocence. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (upholding Bail Reform Act but emphasizing detention must be narrowly tailored and based on individualized findings, not categorical assumptions).

### III

### MR. GERSHMAN IS NOT A SERIOUS RISK OF FLIGHT

The Government exaggerates Mr. Gershman's flight risk by emphasizing his foreign ties and immigration status, while ignoring his demonstrated commitment to remaining in the United States. Mr. Gershman has legal status via a renewed Employment Authorization Document (EAD) under 8 C.F.R. § 274a.12(c)(9), which authorizes him to work pending his adjustment of status application. Exh. A.

This is not the profile of a fugitive; rather, it reflects an individual building a life here. He has two children in the Los Angeles area, maintains gainful employment, and has not fled despite knowing of this investigation for over three years. These factors weigh heavily against detention. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (holding that immigration status should not be considered in flight risk assessments, supporting release despite foreign ties). The Government's reliance on foreign ties is misplaced and directly contradicted by its own cited authority.

To be clear, Mr. Gershman has resided lawfully in the United States for four years, maintains strong family and community ties in Los Angeles, **and has remained in the country despite awareness of this investigation since 2022.** Mr. Gershman has two sons here – one who's an adult and one who's 10 years old. As to the latter, his son, Rohm, lives with his mother and with Mr. Gershman in the same home. Mr. Gershman is very involved in his life—going to sporting events, picking him up and dropping him off at school, etc. In January 2022, Mr. Gershman was arrested in a task force case at his Chandler address in Sherman Oaks. Authorities took his phone and allegedly found a great deal of gambling information. Nothing, however, came of that case. The charges here are nonviolent in nature, involving gambling-related offenses.

In *United States v. Motamedi*, the Ninth Circuit reversed a detention order for an Iranian citizen accused of export violations, finding that foreign ties alone did not establish a flight risk by a preponderance of the evidence. 767 F.2d at 1407-08. There, as here, the defendant had no prior flight history, and the Court emphasized that speculative concerns about international connections were insufficient without concrete evidence of intent to flee. *Id*. at 1406.

And the facts in *Motamedi* are fairly analogous: Mr. Gershman, like Motamedi, has ties abroad but has chosen to remain in the U.S., invest in his family, and comply with immigration processes. The Government's attempt to invoke Motamedi supports release, not detention. Similarly, *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991), is inapposite. *Gebro* affirmed detention for a defendant charged with serious drug offenses under 21 U.S.C. § 841, where the presumption of detention applied under 18 U.S.C. § 3142(e) due to the potential for a lengthy sentence and evidence of ongoing criminal activity. Id. at 1121-22. No such presumption applies here, as the charges are nonviolent and carry no

mandatory minimums triggering it. See 18 U.S.C. § 3142(f)(1)(C) (presumption for certain drug offenses).

Mr. Gershman's case lacks the aggravating factors in *Gebro*, such as involvement in a large-scale narcotics operation. *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990), is equally distinguishable, as it involved a defendant with a history of drug trafficking and evidence of danger to the community, including witness tampering. *Id*. at 995-96. The Court there upheld detention based on clear and convincing evidence of ongoing threats, factors absent here where no violence or tampering is alleged in the indictment. Townsend's emphasis on individualized assessments supports Mr. Gershman, whose clean U.S. record and community support (including five sureties) rebut any flight concerns. *See* Exhs. B-C (letters attesting to Mr. Gershman's reliability and ties).

The Government's attempt to paint Mr. Gershman's friendship with Michael Tansky misses the mark. The two men have been close friends for years, since their formative days as young men in Israel. Their families became friends years ago, and they share Jewish holidays together as well as get-togethers for other occasions—birthdays, graduations, and so forth.

Ninth Circuit precedent favors release in nonviolent cases with mitigated risks. *See Diaz-Hernandez*, 943 F.3d at 1199 (affirming that foreign ties like immigration status do not justify detention where family and employment ties outweigh flight concerns); *see also United States v. Santos-Flores*, 794 F.3d at 1092 (noting that detention decisions must consider less restrictive alternatives). The Government has not met its preponderance burden.

///

///

///

DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS

## IV

## MR. GERSHMAN DOES NOT POSE A DANGER TO THE COMMUNITY

The Government's claims of danger rest on uncharged allegations of connections to "Israeli organized crime" and extortion—conduct not referenced in the indictment. Such extrajudicial assertions should carry no weight, as detention must be based on the charged offenses, not prosecutorial innuendo. *See Salerno*, 481 U.S. at 751 (detention permissible only after "careful inquiry" into specific factors under § 3142(g), emphasizing due process and presumption of innocence). The charged offenses—conspiracy (18 U.S.C. § 371), illegal gambling (18 U.S.C. § 1955), false statements (18 U.S.C. § 1001), marriage fraud (8 U.S.C. § 1325(c)), and immigration document fraud (18 U.S.C. § 1546(a))—are inherently nonviolent and do not suggest any threat to public safety.

*Townsend* and *Gebro*, cited by the Government, are inapposite precisely because they involved violent or drug-related dangers, such as armed drug trafficking, which justified clear and convincing findings of risk. *Townsend*, 897 F.2d at 995 (witness intimidation); *Gebro*, 948 F.2d at 1122 (large-scale drug conspiracy). Here, no such evidence exists, and the Government's reliance on press releases or unproven claims violates the individualized assessment required by *Salerno*, 481 U.S. at 750. And Mr. Gershman's decade-long absence of arrests in the U.S., coupled with community endorsements, demonstrates he poses no danger. His last law enforcement contact was in 2015, and he was released in 2017. Since then he hasn't had an arrest for violence, and, in 2021, he came to America, where he has lived without any law enforcement contacts. Nor does he have a history of the charges he's facing here. The only violence alleged to have occurred in this case was by codefendant Alan Austria, and yet he and every defendant, other than Gershman, is free on bond. *See Hir*, 517 F.3d at 1088 (reversing danger finding

DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS

where evidence was insufficient despite serious charges). The Government fails its clear and convincing burden.

## V
## CONDITIONS OF RELEASE CAN REASONABLY ASSURE APPEARANCE AND SAFETY

Even assuming *arguendo* some risk, conditions can mitigate it. Apart from the suggestions he makes on page 2, *supra*, Mr. Gershman also proposes a $250,000.00 bond secured by five sureties (family and community members pledging assets), GPS monitoring, home detention, surrender of passport and travel documents, and restrictions on international travel. These mirror conditions approved in similar cases. *See Hir*, 517 F.3d at 1091-92 (approving electronic monitoring and sureties for defendant with foreign ties); *Motamedi*, 767 F.2d at 1408 (releasing on personal recognizance with conditions despite international connections).

The Government's assertion that no conditions suffice is unsupported, as it ignores Ninth Circuit precedent favoring tailored restrictions over detention in nonviolent matters. *See Salerno*, 481 U.S. at 755 (Act requires consideration of least restrictive means). Unlike in *Townsend*, where the defendant had tampered with witnesses, no such aggravating conduct exists here. Conditions will suffice.

## VI
## CONCLUSION

For the foregoing reasons, the Court should reconsider the detention order and release Mr. Gershman on the proposed conditions.

///

///

///

DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS

Dated: October 5, 2025

Respectfully submitted,

_____/s/_____
David Kenner
Attorney for Defendant
Yevgeni Gershman

DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS

# PROOF OF SERVICE

I, the undersigned, declare that I am over the age of 18 years and not a party to the within action or proceeding. I am employed in and am a resident of Los Angeles County where the mailing occurs; and my business address is 16633 Ventura Boulevard, Suite 735 Encino, California 91436-1869 On October 6, 2025, I caused to be served the following document(s):

**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER; EXHIBITS**

on the interested parties in this action by as set forth in the Service List attached hereto:

___ BY MAIL: I further declare that I am readily familiar with the firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business pursuant to Code of Civil Procedure section 1013(a). I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

___ BY FACSIMILE SERVICE: I transmitted the document(s) described above to the person(s) and facsimile number(s) identified below pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine.

___ BY PERSONAL SERVICE: I emailed the documents identified above to a courier service, **Name of Service**, to be delivered by personal service to the parties at the addresses listed below.

_X_ ELECTRONIC SERVICE: I transmitted the document(s) described above to the person(s) and email addresses identified below pursuant to California Rules of Court.

___ OVERNIGHT MAIL: I further declare that I am readily familiar with the firm's business practice of collection and processing of overnight delivery for mailing, and that the correspondence shall be deposited with the overnight delivery service, **Federal Express**, to be delivered by overnight delivery to the parties at the address listed below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 6, 2025, at Encino, California.

*SM*

_____
Steve McClain

-10-

DEFENDANT GERSHMAN'S REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR RELEASE ON BAIL; MEMORANDUM IN SUPPORT; EXHIBITS