TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
SAMUEL J. DIAZ (Cal. Bar No. 304503)
Assistant United States Attorney
Transnational Organized Crime Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3045
Facsimile: (213) 894-6269
E-mail: samuel.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YEVGENI GERSHMAN,<br><br>Defendant. | No. CR 25-595-MCS-1<br><br>GOVERNMENT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION RE CHANGE OF PLEA HEARING (DKT. 246); DECLARATION OF SAMUEL J. DIAZ |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Samuel J. Diaz, hereby files its supplemental brief in support of its opposition to defendant Yevgeni Gershman's motion for reconsideration re change of plea hearing (Dkt. 246).

//

//

//

This supplemental brief is based upon the attached memorandum of points and authorities, the declaration of Samuel J. Diaz, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 9, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

/s/
SAMUEL J. DIAZ
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES....1

I. INTRODUCTION....1

II. STATEMENT OF FACTS....1

A. Offense Conduct and Indictment....1

B. The Parties Agreed to a Rule 11(c)(1)(C) Plea Agreement....2

C. The Government Made Repeated Attempts to Reach a Plea Agreement Following the Rejection of the Binding Plea....3

III. DEFENDANT'S MOTION IS MERITLESS AND SHOULD BE DENIED....3

A. Defendant Fails to Establish a Valid Ground for Reconsideration of the Court's Ruling....3

B. Under the Plain Meaning of the Rejected Plea Agreement, the Government Is No Longer Bound to Its Terms....5

C. Defendant Could Not and Did Not Detrimentally Rely on the Rejected Plea Agreement....9

D. There Is No Basis for Judicial Estoppel....11

E. The Government Has Not Engaged in Vindictive Prosecution by Threatening to Seek Superseding Charges....12

1. Legal Standard....12

2. Defendant's Vindictive Prosecution Claim Is Wholly Meritless....14

IV. CONCLUSION....16

# TABLE OF AUTHORITIES

**CASES**

Bordenkircher v. Hayes, 434 U.S. 357 (1978)....................13, 14
Hughes v. United States, 584 U.S. 675 (2018).......................10
In re Morgan, 506 F.3d 705 (9th Cir. 2007)......................4, 5
McKenzie v. Risley, 801 F.2d 1519 (9th Cir. 1986)...........9, 10, 11
United States v. Armstrong, 517 U.S. 456 (1996)...................12
United States v. Gallegos-Curiel, 681 F.2d 1164 (9th Cir. 1982)13, 14
United States v. Gamez-Orduno, 235 F.3d 453 (9th Cir. 2000.....13, 14
United States v. Goodwin, 457 U.S. 368 (1982)..................13, 15
United States v. Heredia, 768 F.3d 1220 (9th Cir. 2014).............5
United States v. Krug, 2012 WL12973177, at *2, (C.D. Cal. Oct. 30, 2012)...........................................................4
United States v. Kuchinski, 469 F.3d 853 (9th Cir. 2006)............9
United States v. Kyle, 734 F.3d 956 (9th Cir. 2013)................11
United States v. Savage, 978 F.2d 1136 (9th Cir. 1992).............11
United States v. Transfiguracion, 442 F.3d 1222 (9th Cir. 2006).....7
Wayte v. United States, 470 U.S. 598 (1985)........................12

**RULES**

C.D. Cal. L. Civ. R. 7-18..........................................4
Fed R. Crim. P. 11(c)(1)(C)...................................1, 5, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In July 2026, the Court exercised its discretion to reject the parties' Rule 11(c)(1)(C) plea agreement, finding the proposed sentence too lenient in light of defendant's criminal history and the facts at issue. Per the plain text of the agreement, once the Court rejected it, the parties were "relieved of their obligations" under the agreement. Unwilling to accept the changed landscape and without setting forth any legal basis to do so, defendant seeks to force the government to re-offer xthe rejected terms. For the reasons explained in this supplement brief in support of the government's opposition to defendant's motion, defendant's motion lacks merit and should be rejected.

## II. STATEMENT OF FACTS

### A. Offense Conduct and Indictment

In early 2022, Homeland Security Investigations ("HSI") and the Los Angeles Police Department investigated defendant and his co-conspirators for operating an illegal gambling business that hosted high-stakes, raked poker games at a luxury residence in Encino, California known as the Gable House.

On July 15, 2025, a grand jury returned an indictment charging defendant with six counts, including: conspiracy to operate an illegal gambling business (Count One); operating an illegal gambling business (Count Two); conspiracy to commit marriage fraud (Count Four); marriage fraud (Count Five); and false statements in visas, permits, and other immigration documents (Count Six). Dkt. 1. As a result, an arrest warrant issued for defendant's arrest.

On July 30, 2025, federal agents executed a federal search warrant at defendant's residence and found him in possession of three serialized firearms, an unserialized AR-style rifle, and an unserialized Polymer80 pistol, along with 39 rounds of ammunition of different calibers. Agents then arrested Gershman pursuant to the arrest warrant.

At his initial appearance, defendant was ordered detained. Dkt. 114. Defendant filed a motion seeking release from custody and, following a hearing on October 6, 2025, the Court denied defendant's motion. Dkt. 154.

**B. The Parties Agreed to a Rule 11(c)(1)(C) Plea Agreement**

In 2025, the government informed defense counsel of its intent to seek additional charges against defendant. (Declaration of Samuel J. Diaz ("Diaz Decl.") ¶ 2).

On April 1, 2026, the government filed a Fed. R. Crim. P. Rule 11(c)(1)(C) plea agreement in which defendant agreed to plead guilty to a First Superseding Information that charged him with conspiracy to operate an illegal gambling business (Count One); false statements in visas, permits, and other immigration documents (Count Two); laundering of monetary instruments (Count Three); and being a prohibited person in possession of firearms and ammunition (Count Four). Dkt. 186, 188. Under the agreement, the parties stipulated to a 24-month prison sentence. The agreement did not contain a stipulation to a judicial order of removal. See Dkt. 188, ¶ 23.

On April 8, 2026, the Court held a change of plea hearing in which it deferred on whether to accept the Rule 11(c)(1)(C) agreement pending the preparation of a presentence report ("PSR"). Dkt. 192.

The Court held the sentencing hearing on July 6, 2026, and exercised its discretion to reject the agreement, finding it too lenient in light of the specific facts and circumstances at issue. Dkt. 229. Defendant then withdrew his guilty pleas.

### C. The Government Made Repeated Attempts to Reach a Plea Agreement Following the Rejection of the Binding Plea

On July 29, 2026, in light of the foregoing, the government extended a general, non-binding plea offer to defendant with an expiration date of August 7, 2026. (Diaz Decl. at ¶ 3.) The plea offer required defendant not to seek a sentence below 60 months' imprisonment. After defense counsel David Kenner requested additional time and modifications, the government issued a revised plea offer on August 10, 2026. (Id. at ¶ 4.) Defense counsel again requested additional time and modifications leading to a third plea offer on August 20, 2026. (Id.) And defense counsel yet again requested additional time and modifications, leading to a fourth plea offer on August 25, 2026. (Id.) The August 25, 2026 plea offer had an expiration date of August 26, 2026, and did not contain a floor, meaning that defendant was free to request any sentence from the Court. (Id.)

Defendant rejected the plea offer and filed the instant motion on August 27, 2026. Dkt. 246.

## III. DEFENDANT'S MOTION IS MERITLESS AND SHOULD BE DENIED

### A. Defendant Fails to Establish a Valid Ground for Reconsideration of the Court's Ruling

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." United States v. Krug, 2012 WL12973177, at *2, (C.D. Cal. Oct. 30,

2012). In this district, a motion for reconsideration may only be made where there is "(a) a material difference in fact or law from that presented to the Court that, in exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was ordered." C.D. Cal. L. Civ. R. 7-18.

Defendant fails to satisfy (or even address) any of the prongs required to seek reconsideration of the Court's ruling rejecting the parties' Rule 11(c)(1)(C) plea agreement. Defendant's disappointment and disagreement with the Court's ruling is not a basis for reconsideration.

Instead, defendant argues that the Court's reasoning in rejecting the binding plea was conclusory and incomplete. (Mot. at 13-14.) Not so. In evaluating whether to accept binding plea offers, the Ninth Circuit has held that courts "must consider individually every sentence bargain presented to them and must set forth, on the record, the court's reasons in light of the specific circumstances of the case for rejecting the bargain." In re Morgan, 506 F.3d 705, 712 (9th Cir. 2007).

The Court did just that. It explained on the record that it found the proposed sentence too lenient based on defendant's criminal history in Israel, "especially the 2015 conviction for assault that caused actual bodily harm," as well as defendant's possession of two unserialized firearms. Dkt. 246 at pp. 4-5.

The Court was not required to identify comparators who had received greater sentences for similar charges, or establish that defendant knew that two of the firearms were unserialized.[1] As to defendant's complaint that the Court failed to consider "the stipulated judicial order of removal," Mot. at 15, the rejected agreement did not contain a stipulated judicial order of removal. It follows that the Court did not err in failing to consider a provision that was not a part of the plea agreement.

Because the Court's analysis was based on the specific facts of this case, its decision to reject the Rule 11(c)(1)(C) plea falls well-within the "broad discretion Rule 11 confers on district courts[.]" In re Morgan, 506 F.3d at 711.

**B. Under the Plain Meaning of the Rejected Plea Agreement, the Government Is No Longer Bound to Its Terms**

Defendant next argues that even if the Court does not reconsider its rejection of the Rule 11(c)(1)(C) plea agreement, that the Court should nevertheless hold the government to the agreement's terms. Defendant's request lacks merit because the rejected agreement clearly and expressly provides that if the Court rejected the agreement, that the parties' obligations under the agreement were null and void.

Plea agreements are "essentially contracts," and construed according to their "literal terms." United States v. Heredia, 768 F.3d 1220, 1230 (9th Cir. 2014). Paragraph 2 of the Rule 11(c)(1)(C) agreement provides:

[1] The factual basis to the Rule 11(c)(1)(C) plea agreement provides that defendant "knowingly possessed" the unserialized firearms.

> Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty pleas entered pursuant to this agreement, this agreement will, with the exception of paragraph 28 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 31 and 32 below, will control, with the result that defendant will not be able to withdraw any guilty pleas entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

Dkt. 188, Rule 11(c)(1)(C) Plea Agreement ¶ 2 (emphasis added). By its plain terms, the agreement provides that if the Court determined it would not accept the plea agreement, that the agreement would be "rendered null and void," and the USAO would be "relieved of their obligations under this agreement."

Here, on July 6, 2026, the Court exercised its discretion and determined that it would not accept the Rule 11(c)(1)(C) plea agreement. Accordingly, pursuant to Paragraph 2, the agreement became null and void and both defendant and the government were "relieved of their obligations" under the agreement.

The only exception, contained at Paragraph 28, reinforces the fact that the government is not bound by the provisions of the rejected plea agreement. Paragraph 28 provides:

> Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement;

> and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

Id. at ¶ 28 (emphasis added). Pursuant to Paragraph 28, after defendant withdrew his guilty pleas the USAO was "relieved of all of its obligations under the agreement," and regained certain options – including to pursue any charge that was either dismissed or not filed as a result of the agreement.

Defendant's numerous attempts to evade the plain meaning of the Rule 11(c)(1)(C) agreement fail. First, defendant argues that Paragraph 2 only relieved the government of its obligation to stipulate to a 24-month sentence. Mot. at 18. Paragraph 2 goes much farther than that. It provides that upon the Court's rejection of the agreement, the parties were "relieved of their obligations" under obligations under the agreement. Id. at ¶ 2 (emphasis added). And per Paragraph 28, once defendant withdrew his pleas, the government was "relieved of all of its obligations" under the agreement. Id. at ¶ 28 (emphasis added). The government's obligations included not just the sentencing recommendation, but the non-prosecution agreement reached between the parties, among others. By its plain terms, these obligations are no longer binding on the government because of the Court's rejection of the agreement and defendant's withdrawal of his guilty pleas.

Defendant's reliance on United States v. Transfiguracion, 442 F.3d 1222 (9th Cir. 2006), Mot. at 18-19, is unavailing. In

Transfiguracion, the defendants pled guilty pursuant to plea agreements to importing narcotics from Guam into the United States. Id. at 1224. After the pleas were entered, the Ninth Circuit held in a separate case that drug trafficking between Guam and California did not constitute importation of narcotics into the United States. Id. at 1226. Once the defendants moved to dismiss their charging instruments, the government sought to be relieved of its obligations under the plea agreements, including the agreement not to prosecute defendants on drug conspiracy charges. Id. at 1234. The Court held that despite the change in law, the plain terms of the plea agreement only allowed the government to proceed on the conspiracy charges if the plea was "rejected, withdrawn, vacated, or reversed." Id. at 1230. Because the defendants' actions in moving to dismiss their charging instruments "were not barred by the agreements' literal terms," the agreements remained in force. Id. at 1232.

By contrast, here, the literal and agreed-upon terms of Paragraph 2 specifically provide that if the Court declined to accept the agreement, that the government was relieved of its obligations under the agreement with the exception of Paragraph 28, which provides that if defendant successfully withdrew his guilty pleas, the government was relieved of all of its obligations under the agreement.

Second, there is no ambiguity to be read against the government. The plain language of Paragraph 2 relieves the government of its obligations upon the Court's rejection of the Rule 11(c)(1)(C) agreement and further specifies, in Paragraph 28, that the government is relieved of all of its obligations upon defendant's withdrawal of his guilty pleas. Paragraph 28 further explains that upon withdrawal

of his guilty pleas for any reason other than voluntariness, the government "will be relieved" of all its obligations under the agreement and permits the government to pursue any charge that was dismissed or not filed as a result of the agreement.

Third, as to defendant's complaint that the government may seek to use the rejected plea, his plea colloquy, or the factual basis against him, the government will not be introducing these materials against defendant in its case-in-chief, which the government informed counsel of prior to filing this supplemental opposition.

Fourth, any argument regarding breach is a red herring. The Court's rejection of the Rule 11(c)(1)(C) agreement along with defendant's withdrawal of his guilty pleas relieved the government of its obligations under the agreement according to the agreement's own terms; the current litigation has nothing to do with any accusation of breach.

### C. Defendant Could Not and Did Not Detrimentally Rely on the Rejected Plea Agreement

Unable to square his requested relief with the plain terms of the Rule 11(c)(1)(C) agreement, defendant next argues that the government should nevertheless be held to the terms of the rejected Rule 11(c)(1)(C) agreement under the doctrine of detrimental reliance.

"A defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding." McKenzie v. Risley, 801 F.2d 1519, 1527 (9th Cir. 1986), opinion vacated in part on other grounds, 842 F.2d 1525 (9th Cir. 1988); see also, United States v. Kuchinski, 469 F.3d 853, 858 (9th Cir. 2006) ("where detrimental reliance is shown, the government may be bound even

before the district court accepts the agreement”). A defendant’s detrimental reliance “must be reasonable.” McKenzie, 801 F.2d at 1528.

In McKenzie, the Ninth Circuit explained that it was not reasonable to detrimentally rely on a plea agreement that was “subject to a contingency.” Id. There, the defendant was charged with murder and entered into negotiations with local prosecutors for a plea agreement that did not include the death penalty. Id. at 1527. The plea agreement required the consent of the victim’s parents who objected to the proposed plea offer, leading to the government’s withdrawal of the offer. Id. “[W]e have concluded that the plea agreement was subject to a contingency and that any reliance on the contingent plea agreement was unreasonable.” Id. at 1528.

The same follows here. The Rule 11(c)(1)(C) agreement “was contingent on the district court accepting the agreement and its stipulated sentence.” Hughes v. United States, 584 U.S. 675, 687 (2018). It was unreasonable for defendant to detrimentally rely on a plea agreement that he understood required the Court’s approval to become binding – which he was told in Paragraph 2 of the Rule 11(c)(1)(C) plea agreement, which states: “defendant understands that, if the Court determines that it will not accept this agreement . . . this agreement will . . . be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement.”

Moreover, even if a claim of detrimental reliance could be raised in a Rule 11(c)(1)(C) context, defendant has offered no basis for a finding of detrimental reliance. Outside of pleading guilty pursuant to the Rule 11(c)(1)(C) agreement, defendant “did not

provide any information or other benefit to the based on the agreement," United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992), or disclose the defense's perceived weaknesses of the government's case, McKenzie, 801 F.2d at 1527. Nor is defendant prejudiced by his plea colloquy or his admission of its factual basis as the government has agreed not to introduce these matters against defendant in its case-in-chief.

Defendant knew, upon reviewing and signing the Rule 11(c)(1)(C) plea agreement that it would be contingent on the Court's approval. He therefore could not have, and did not, detrimentally rely on the rejected plea agreement.

**D. There Is No Basis for Judicial Estoppel**

There is no basis for the Court to enjoin the government from "tendering any new agreement whose terms are materially harsher than those to which it already committed itself." Mot. at 27.

As a threshold matter, Rule 11(c)(1) provides that courts "must not participate" in the parties' plea discussions. "Rule 11(c)(1) seeks to prevent 'judge[s] from shaping plea bargains or persuading the defendant to accept particular terms.'" United States v. Kyle, 734 F.3d 956, 963 (9th Cir. 2013) (citation omitted). Defendant's request that the Court fix the plea offers that the government may offer is improper and should be rejected.

Defendant's attempt to enjoin the government from seeking superseding charges fares even worse. This request is incompatible with the plain text of the rejected agreement. Paragraph 28 plainly provides that if the defendant withdraws his guilty pleas and the government "choose[s] to pursue any charge that was either dismissed or not filed as a result of this agreement" that the statute of

limitation tolls, and that defendant waives statute of limitations, pre-indictment delay, or speedy trial defenses.

Defendant also fails to offer any authority for his request that the Court enjoin the government from seeking superseding charges or address how such an injunction would not violate the separation of powers between co-equal branches of government.

The government further rejects defendant's contention that it is leveraging the Court's rejection of the Rule 11(c)(1)(C) against him. Mot. at 26. As defendant acknowledges, the government "did not seek and did not urge" the Court's rejection of the agreement. Mot. at 25. However, now that the agreement has been rejected, the parties return to the positions they occupied prior to entering into the rejected plea agreement.[2]

**E. The Government Has Not Engaged in Vindictive Prosecution by Threatening to Seek Superseding Charges**

1. Legal Standard

Prosecutors possess broad discretion in deciding which cases to prosecute and what charges to bring. Wayte v. United States, 470 U.S. 598, 607 (1985). As the Supreme Court has repeatedly emphasized, "in the absence of clear evidence to the contrary, courts presume that [United States Attorneys] have properly discharged their official duties." United States v. Armstrong, 517 U.S. 456, 464 (1996). Accordingly, "so long as the prosecutor has probable cause

[2] Defendant's contention that the government has already "argued to this Court every adverse fact the Government possesses," Mot. at 3, at defendant's detention hearing is irrelevant and incorrect. The government's arguments at the detention hearing were limited to showing that defendant was a danger and a flight risk. The government did not conduct an exhaustive presentation of all the evidence it possesses against defendant.

to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

A claim of vindictive prosecution imposes a demanding standard. To prevail, a defendant must show that the government increased or added charges "solely to 'penalize' the defendant and [that such charges] could not be justified as a proper exercise of prosecutorial discretion." United States v. Goodwin, 457 U.S. 368, 380 n.12 (1982); see also, United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000) ("A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right.").

Under this framework, a defendant may establish vindictive prosecution in one of two ways. First, the defendant may produce direct evidence of the prosecutor's punitive motivation. United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir. 1982). Alternatively, a defendant may establish a presumption of vindictiveness by showing that additional charges "were filed because [the defendant] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." Id.

"[T]he severe presumption [of vindictiveness] should not be invoked lightly." Id. at 1171 (internal citation omitted). This presumption of vindictiveness generally arises only when the government increases charges after trial or during trial, not before it. Goodwin, 457 U.S. at 376-77, 381.

"[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher, 434 U.S. at 363.

A prosecutor does not engage in vindictive prosecution simply by seeking charges not contained in the initial indictment. Gallegos-Curiel, 681 F.2d at 1170 ("Departures from the initial indictment do not raise presumptions of vindictiveness except in a rare case."); see also, Gamez-Orduno, 235 F.3d at 463 ("threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process.").

2. Defendant's Vindictive Prosecution Claim Is Wholly Meritless

Defendant contends that the government's threats to bring superseding charges "raises a separate due process concern." Mot. at 30. According to defendant, the government is retaliating against defendant for exercising his right to withdraw his guilty pleas. Mot. at 31. Defendant's contention is wholly meritless.

As a threshold matter, the government has not yet obtained superseding charges. Defendant fails to provide any support for his contention that the mere threat of obtaining superseding charges rises to the level of establishing vindictive prosecution.

However, should the government seek and obtain superseding charges, defendant will still lack a viable vindictive prosecution claim. "[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that

a defendant would plead guilty to lesser charges proves unfounded." Goodwin, 457 U.S. at 372.

That is exactly the case here. Following the Court's rejection of the parties' binding plea agreement, the government engaged in extensive, good-faith plea negotiations with defendant and extended a total of four plea offers from July 29, 2026 until defendant's filing of the instant motion on August 27, 2026. (Diaz Decl. at ¶ 3.) Contrary to defendant's assertions, the final plea offer had no sentencing floor and did not require defendant to seek a minimum sentence of 60 months' imprisonment. The government also frequently extended the expiration date of the respective plea offers to accommodate defense counsel's requests.

The plea negotiations in this case, moreover, were at all times made against the backdrop of potential superseding charges. As early as last year, the government made defendant aware of its intent to seek additional charges against him. (Diaz Decl. at ¶ 2.) Indeed, the First Superseding Information contains two charges that are not in the Indictment (Counts Three and Four) and does not contain several charges that are in the Indictment. See Dkt. 186. The Rule 11(c)(1)(C) plea agreement, moreover, contains a non-prosecution agreement outlining additional potential charges against defendant.

On this record, defendant's claim that the government is seeking superseding charges solely to retaliate against him for deciding to withdraw his guilty pleas is unserious. It was not defendant's decision to withdraw his guilty pleas that drives the government to seek additional charges. Rather, the government will be seeking superseding charges because the normal give and take of plea negotiations has not borne fruit.

In sum, defendant's vindictive prosecution claim is meritless and should be denied.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion for Reconsideration re Change of Plea Hearing, Dkt. 246.

Declaration of Samuel J. Diaz

I, Samuel J. Diaz, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California and represent the government in 25-595-MCS, United States v. Gershman, et al. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. In 2025, I communicated to defense counsel David Kenner that the government would be seeking superseding charges against defendant. In response, defense counsel asked about negotiating a disposition that avoided the filing of a First Superseding Indictment on all potential charges. Eventually, the parties agreed to the Rule 11(c)(1)(C) plea agreement to the four-count First Superseding Information. Dkt. 188.

3. Following the Court's rejection of the Rule 11(c)(1)(C) plea agreement, I extended a plea offer to defendant on July 29, 2026. The plea offer had an expiration date of August 7, 2026 and was a non-binding plea that required defendant not to seek a sentence below 60 months' imprisonment.

4. Pursuant to Mr. Kenner's repeated requests for additional time and modifications, I extended revised plea offers on August 10, 2026, August 20, 2026, and August 25, 2026. The final plea offer, which expired on August 26, 2026, did not contain a floor and permitted defense counsel to request any sentence he deemed warranted.

5. In extending the plea offers, I repeatedly explained to defense counsel that the government would be seeking superseding

charges against defendant should the parties not reach a plea agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on September 9, 2026.

/s/
SAMUEL J. DIAZ